T.C. Memo. 1996-167


UNITED STATES TAX COURT


HYMAN S. AND GAILE S. ZFASS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 9290-94.              Filed April 2, 1996.


<u>Craig D. Bell</u>, for petitioners.

<u>William L. Ringuette</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, <u>Judge</u>:  Respondent determined the following additions
to petitioners' Federal income taxes in two notices of deficiency,
both dated March 3, 1994:

| | Additions to Tax | | |
|---|---|---|---|
| Year | Sec. 6653(a)(1) | Sec. 6653(a)(2) | Sec. 6659 |
| 1982 | $789 | $18,278 | $4,732 |
| 1983 | 540 | 10,545 | 3,242 |

Following a concession by respondent,[1] the issues for decision are: (1) Whether Hyman S. Zfass (petitioner) is liable for additions to tax under section 6653(a)(1) and (2) for 1982 and 1983, and (2) whether petitioner is liable for additions to tax under section 6659 for 1982 and 1983.

All section references are to the Internal Revenue Code for the years under consideration. All Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Background

Petitioners, husband and wife, resided in Richmond, Virginia, at the time they filed their petition. Petitioners timely filed

---

[1] The parties have stipulated that Mrs. Zfass was not involved in the purchase of the partnership interest involved herein and was unaware of the substantial understatements on the 1982 and 1983 tax returns. Respondent concedes that Mrs. Zfass is an innocent spouse for both years in issue and hence not liable for any of the additions to tax involved herein.

joint Federal income tax returns for 1982 and 1983, the years under consideration.

Petitioner is a medical doctor who has been practicing medicine for more than 50 years. Over the years, petitioner's practice has focused, to a considerable extent, on sports and exercise medicine.

In 1982, petitioner acquired a 2.83-percent interest (represented by one partner unit) in Therapeutics CME Group, L.P., a Connecticut limited partnership (the partnership), for $17,160. The stated purpose of the partnership was to acquire by lease and thereafter exploit a series of video disk master programs on exercise and sports therapy. The master programs were to be produced by World Video Corp. in connection with the School of Continuing Education and the Television Center of Hahnemann Medical College and Hospital of Philadelphia (Hahnemann). The partnership was to arrange for the reproduction of the programs on video cassettes and video disks and thereafter sell them principally to members of the medical profession for use in satisfying their continuing medical education requirements.

Petitioner learned about the partnership from B. Roland Freasier, Jr., petitioner's friend and a person whom petitioner had used as an accountant and attorney, and from whom he obtained investment advice. Freasier arranged for petitioner to meet with Virgil Williams, the partnership's tax matters partner. Williams

provided petitioner with a private placement memorandum (which was more than an inch thick) for the partnership, which petitioner read "from cover to cover". Williams also provided petitioner with two videotapes that were represented to be comparable to those that the partnership would be marketing. Petitioner watched the tapes at his home and recognized the moderator on the tapes as a well-known and respected physician. Petitioner was also familiar with the favorable reputation enjoyed by Hahnemann.

A significant portion of the private placement memorandum was dedicated to a discussion of the tax aspects of an investment in the partnership. The private placement memorandum contained a summary of the offering which, in pertinent part, stated:

ESTIMATED TAX EFFECT
PER $17,000 UNIT:

> Although Therapeutics CME Group, L.P. ("Partnership") may have income from its operations, for illustration purposes, the figures below do not take into account any income and assume a 50% tax bracket taxpayer. The Internal Revenue Service (the "IRS" or "Service") may disallow any of the various elements used in calculating Partnership expenses and credits thereby reducing federal income tax benefits on an investment.

|  | 1982 | 1983 |
|---|---|---|
| Capital contribution | $ 8,500 | $ 8,500 |
| Deductible Loss Equivalent | 31,903 | 27,745 |
| Tax Write-off to Cash Investment Ratio | 3.8 to 1 | 3.3 to 1 |

The private placement memorandum, as well as a tax opinion

letter that was attached to the memorandum, informed a potential investor that the Internal Revenue Service (IRS) had been conducting a "tax shelter program" to identify and examine "abusive" tax shelters and that such a program "increases the likelihood that the Partnership's and a Partner's return may be audited." The private placement memorandum also informed the reader that the depreciation deductions and investment tax credit that the partnership intended to claim and pass through to its partners would be based on a fair market value of each master video disk of $877,663, and that there was no assurance "that the Masters could be sold for the appraised value or that the lease fee program will provide the Partnership with a fair return on equity."

Petitioner discussed the possibility of purchasing an interest in the partnership with Freasier. Petitioner knew that acquiring an interest in the partnership would provide him with immediate and future tax advantages. In particular, he understood that he would receive tax benefits of up to $3.80 for each $1 invested.

After petitioner became a limited partner in the partnership, the partnership's tax return was audited by the IRS. As a result of this audit, on February 27, 1987, the IRS sent petitioners, and other partners in the partnership, a notice of final partnership administrative adjustment (FPAA) for 1982 and 1983. The partnership's tax matters partner thereafter filed a petition in this Court to contest the adjustments contained in the FPAA.

The partnership was one of 27 partnerships for which there was a test case, Charlton v. Commissioner, T.C. Memo. 1990-402, affd. 990 F.2d 1161 (9th Cir. 1993). Like the partnership in which petitioner was involved, the three partnerships at issue in Charlton invested in the production of videotapes for use in continuing medical education programs. In Charlton, we held that: (1) The three partnerships lacked the requisite profit objective; (2) the sales forecast and the values of the license, leases, and tapes were grossly overstated; and (3) these were sham transactions entered into primarily for their tax benefits. We therein upheld the additions to tax for negligence and substantial understatement of tax and imposed additional interest attributable to a tax-motivated transaction.

Following Charlton, on January 25, 1993, the partnership's tax matters partner and the IRS entered into a stipulated decision in which the tax matters partner agreed to the disallowance of all deductions and investment tax credits. Thereafter, petitioners were assessed $15,773 for 1982 and $10,805 for 1983; they concede liability for those assessments. At issue herein are the resulting additions to tax for negligence under section 6653(a)(1) and (2) and the additions to tax for valuation overstatement under section 6659.[2]

---

[2] Petitioners request that we consider whether they are liable for additional interest under sec. 6621(c). Because the

(continued...)

OPINION

Issue 1.  Negligence

Section 6653(a)(1) provides that if any part of an underpayment of tax is the result of negligence or intentional disregard of rules or regulations, 5 percent of the underpayment is added to the tax.  Section 6653(a)(2) imposes an addition to tax of 50 percent of the interest on the portion of the underpayment attributable to negligence.  Negligence is defined as the failure to exercise the due care that a reasonable, prudent person would exercise under similar circumstances.  Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982); Neely v. Commissioner, 85 T.C. 934, 947 (1985).  Respondent's determination of negligence is presumed to be correct, and petitioner has the burden of proving that it is erroneous.  Rule 142(a); Luman v. Commissioner, 79 T.C. 846, 860-861 (1982).

Reasonable reliance on the advice of experts can be sufficient to avoid the negligence penalty.  Ewing v. Commissioner, 91 T.C. 396, 423 (1988), affd. without published opinion and affd. without published opinion sub nom. Czarneski v. Commissioner, 940 F.2d 1534

_____

[2](...continued)
applicability of the sec. 6621(c) increased rate of interest on petitioners' previously determined deficiencies for 1982 and 1983 is not a "deficiency" attributable to an affected item requiring partner level determination, and thus is not one of the adjustments in the notice of deficiency, we do not have jurisdiction to consider (in the setting presented in this case) whether petitioners are liable for additional interest.  See White v. Commissioner, 95 T.C. 209 (1990).

(9th Cir. 1991); Industrial Valley Bank & Trust Co. v. Commissioner, 66 T.C. 272, 283 (1976). Reliance on professional advice, by itself, is not an absolute defense to negligence. A taxpayer first must demonstrate that his reliance was reasonable. Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991).

A taxpayer's reliance on representations by insiders, promoters, or offering materials can be an inadequate defense to negligence. LaVerne v. Commissioner, 94 T.C. 637, 652-653 (1990), affd. without published opinion 956 F.2d 274 (9th Cir. 1992), affd. without published opinion sub nom. Cowles v. Commissioner, 949 F.2d 401 (10th Cir. 1991). Reliance on a professional adviser can be inadequate when the taxpayer and his adviser knew nothing about the nontax business aspects of the venture. Beck v. Commissioner, 85 T.C. 557 (1985); Flowers v. Commissioner, 80 T.C. 914 (1983). In order for reliance on professional advice to excuse a taxpayer from the negligence additions to tax, the reliance must be reasonable, in good faith, and based upon full disclosure. Freytag v. Commissioner, supra at 888.

Petitioner contends that he is not liable for the section 6653(a)(1) and (2) additions to tax. He argues that he had the "expertise and intelligence" to properly evaluate the quality of the investment because of his experience as a medical doctor in sports medicine, his knowledge of continuing medical education

requirements, and his familiarity with the reputation of Hahnemann, which was to produce the programs. As for other aspects of the investment, petitioner contends that it was reasonable for him to rely on the recommendation of Freasier, petitioner's "long-standing and trusted tax attorney".

We do not believe petitioner's medical expertise gave him the "expertise and intelligence" to decide whether his investment in the partnership made economic sense. Indeed, in Charlton v. Commissioner, supra, we held that the partnerships were sham transactions in which tax considerations were paramount. Petitioner's knowledge of sports medicine, Hahnemann's reputation, and the continuing medical education needs of physicians provided at most a superficial basis for evaluating this purported investment opportunity.

We believe that a reasonable investor would have done more than petitioner did in determining whether an investment in the partnership made economic sense. In our opinion, petitioner's decision to become a partner in the partnership was tax driven, not economically driven.

The record is devoid of any evidence that Freasier had knowledge about the nontax aspects of the partnership beyond that contained in the promotional material. (Freasier did not testify.) Further, the record is devoid of the type of advice (tax vs. investment) petitioner received from Freasier. In this regard,

petitioner's testimony was vague; he merely recalled having asked Freasier whether the investment "would fly". We believe this inquiry was directed to whether the purported tax deductions "would fly", not whether the economics of the investment "would fly". We are not convinced that Freasier possessed sufficient knowledge about the nontax aspects of the partnership to give petitioner competent advice.

Petitioner compares his case to <u>Mollen v. United States</u>, 72 AFTR 2d 93-6443, 93-2 USTC par. 50,585 (D. Ariz. 1993), in which a medical doctor who invested in one of the partnerships described in <u>Charlton v. Commissioner</u>, T.C. Memo. 1990-402, avoided the imposition of negligence penalties because of reliance on advisers. <u>Mollen</u> is not binding herein.

In summary, petitioner failed to prove that any part of the underpayment of his 1982 and 1983 taxes was due to reasonable cause. To the contrary, we hold that the entire underpayment of taxes for both years was the result of petitioner's negligence. Accordingly, petitioner is liable for additions to tax under section 6653(a)(1) and (2) for 1982 and 1983.

<u>Issue 2. Valuation Overstatement</u>

The second issue is whether petitioner is liable for additions to tax under section 6659. That section imposes an addition to tax if an underpayment of tax of $1,000 or more is attributable to a valuation overstatement. Sec. 6659(a), (d). A valuation

overstatement is found if the claimed fair market value or adjusted basis of property is at least 150 percent of the correct amount. Sec. 6659(c).

Petitioner claims that the disallowance of the claimed partnership deductions and investment tax credits is unrelated to any valuation overstatement, thus making the section 6659 addition to tax inappropriate in this case.

If an underpayment of tax is not "attributable to" a valuation overstatement, the section 6659 addition does not apply.  See McCrary v. Commissioner, 92 T.C. 827 (1989).  Section 6659 does apply, however, when the claimed valuation was an integral factor in disallowing deductions and credits.  See Illes v. Commissioner, 982 F.2d 163, 167 (6th Cir. 1992), affg. T.C. Memo. 1991-449.  When a transaction lacks economic substance, the correct basis is zero; any amount claimed is a valuation overstatement.  Gilman v. Commissioner, 933 F.2d 143, 151 (2d Cir. 1991), affg. T.C. Memo. 1989-684; Rybak v. Commissioner, 91 T.C. 524, 566-567 (1988).

In Charlton v. Commissioner, supra, valuation overstatement was central to the holding that the transactions were a sham.  It is obvious from the record in this case that valuation overstatement was a primary reason for the disallowance of the claimed tax benefits.  Accordingly, we hold that petitioner is

liable for the section 6659 additions to tax for 1982 and 1983.

To reflect respondent's concession,

<u>Decision will be entered under Rule 155</u>.