Filed:  July 3, 1997

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 96-2266
(Tax Ct. No. 94-9290)

Hyman S. Zfass,

Petitioner - Appellant,

versus

Commissioner of Internal Revenue,

Respondent - Appellee.

O R D E R

The Court amends its opinion filed June 23, 1997, as follows:

On page 11, footnote 8, lines 1 and 4 -- the references to "Heasley's" are corrected to read "Heasleys."

For the Court - By Direction

/s/ Patricia S. Connor

Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

HYMAN S. ZFASS,
Petitioner-Appellant,

v.                                                          No. 96-2266

COMMISSIONER OF INTERNAL REVENUE,
Respondent-Appellee.

Appeal from the United States Tax Court.
(Tax Ct. No. 94-9290)

Argued: May 9, 1997

Decided: June 23, 1997

Before MURNAGHAN and NIEMEYER, Circuit Judges, and
FABER, United States District Judge for the
Southern District of West Virginia, sitting by designation.

_____

Affirmed by published opinion. Judge Murnaghan wrote the opinion,
in which Judge Niemeyer and Judge Faber joined.

_____

**COUNSEL**

**ARGUED:** Craig Dennis Bell, TAYLOR, HAZEN & KAUFFMAN,
L.C., Richmond, Virginia, for Appellant. Patricia McDonald Bow-
man, Tax Division, UNITED STATES DEPARTMENT OF JUS-
TICE, Washington, D.C., for Appellee. **ON BRIEF:** Loretta C.
Argrett, Assistant Attorney General, Richard Farber, Tax Division,
UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Appellee.

_____

**OPINION**

MURNAGHAN, Circuit Judge:

The Internal Revenue Service ("IRS") determined that Hyman Zfass, Appellant, participated in a tax shelter which was solely tax motivated. The IRS, therefore, disallowed the deductions taken on his income tax returns and required him to pay interest and penalties. Zfass's wife was dismissed as an innocent party.

Zfass has argued that he exercised good faith in relying on his own expertise in the medical field and his accountant's advice in assessing the profitability of the tax shelter and that the negligence penalties were therefore improper. Moreover, he also has contested the over-valuation penalty assessed claiming that the deficiency was related to a reduction in deductions and not to a valuation overstatement. Zfass also objected to the increased rate of interest employed by the IRS in calculating what he owed.

The Tax Court upheld the IRS's determination regarding tax liability and penalties. The Tax Court declined to to rule on the validity of the increased interest rate since the Tax Court concluded that it lacked jurisdiction to do so.

FACTS

Hyman Zfass is a medical doctor who specializes in sports medicine. In 1982 Zfass purchased one partnership share in Therapeutics CME Group, L.P., a limited partnership the stated purpose of which was to acquire by lease and to market continuing medical education ("CME") video programs.

The video disk master programs were produced by World Video Crop and the television center of Hahnemann Medical College and Hospital of Philadelphia ("Hahnemann"). The partnership was responsible for reproducing the programs and selling them to members of the medical profession to satisfy their continuing medical education requirements. Dr. Zfass was an expert in sports medicine and was familiar with Hahnemann and at least one of the physicians who was the moderator on one of the tapes.

2

The cost of one partnership share was $17,000, half of which was paid in 1982 and half in 1983. The partnership promised that in return for his investment Zfass would receive a tax deduction of $31,902 in 1982 and $27,745 in 1983. Assuming a taxpayer was in the 50% tax bracket, the taxpayer would receive almost $16,000 in 1982 and $14,000 in 1983.

Zfass learned about the partnership from B. Roland Freasier, Zfass's tax adviser and attorney. Freasier introduced Zfass to Virgil Williams who was the partnership's tax matters partner. Zfass was provided with a private placement memorandum which Zfass read "from cover to cover."

The private placement memorandum throughly discussed the tax implications of the partnership. The memorandum stated:

ESTIMATED TAX
EFFECT PER $17,000
UNIT: Although Therapeutics CME Group, L.P. ("Partnership") may have income from its operations, for illustration purposes, the figures below do not take into account any income and assume a 50% tax bracket taxpayer. The Internal Revenue Service (the "IRS" or "Service") may disallow any of the various elements used in calculating Partnership expenses and credits thereby reducing federal income tax benefits on an investment.

|  | 1982 | 1983 |
| --- | --- | --- |
| Capital contribution | $ 8,500 | $ 8,500 |
| Deductible Loss Equivalent | 31,903 | 27,745 |
| Tax Write-off to Cash Investment Ratio | 3.8 to 1 | 3.3 to 1 |

The deductible loss equivalent represents the tax deduction to the

3

taxpayer.**1** Therefore, in 1982 a taxpayer could expect to receive a $3.8 tax deduction for every one dollar invested. Assuming the taxpayer was in the 50% tax bracket this would represent a $1.90 return for every dollar invested. So assuming the partnership never made a penny, the taxpayer would still receive almost a 100% return on his investment by virtue of payment to the taxpayer from the United States Treasury.

The private placement memorandum, as well as a tax opinion letter that was attached to the memorandum, warned potential investors that the IRS was attempting to identify and examine "abusive" tax shelters and that the IRS's actions increased the likelihood that the investor's return would be audited.

The memorandum also warned investors that the depreciation deductions and investment tax credit that the partnership intended to claim and pass through to its partners would be based on a fair market value of each master video disk of $877,663, and that there was no assurance "that the Masters could be sold for the appraised value or that the lease fee program will provide the Partnership with a fair return on equity."

Although it is unclear to what extent, Zfass discussed the possibility of purchasing an interest in the partnership with Freasier. Zfass claims that due to his medical knowledge and his impression of Hahnemann and the physicians involved in the tapes he believed that the partnership would make a profit. However, the private placement memorandum made no projections regarding sales, income, or return on investment excluding tax benefits. In fact, the main return on investment representation assumed that the partnership was not profitable.

---

**1** The private placement memorandum indicates that the deduction consists primarily of lease payments and an investment tax credit. Since the tax credit is not merely a deduction but is applied as an offset to a taxpayer's tax liability, the partnership treated each dollar of the investment tax credit as a $2.00 deductible loss for purposes of calculating the deductible loss equivalent.

4

What Zfass knew was that, as the partnership was presented, he could not lose. He would receive almost a 100% return on his investment if the partnership failed to sell even one video tape. It was unnecessary for the partnership to convince Zfass that it could make a profit, because Zfass would profit, by way of payment by the United States Treasury, regardless of whether the partnership turned a profit.

After Zfass became a limited partner in the partnership, the partnership's tax return, as well as the tax returns of 26 similar partnerships, was audited by the IRS. The IRS sent notices to the parties that the tax deductions would be disallowed and the partnership's tax matters partner filed a petition in the Tax Court to contest the adjustments.

Since the 27 partnerships all involved the production of videotapes for use in CME programs, the partnerships and the IRS agreed to use three of the partnerships as a test case. See Charlton v. Commissioner, 60 T.C.M. (CCH) 324 (1990), aff'd 990 F.2d 1161 (9th Cir. 1993). In Charlton, the Tax Court upheld the IRS's determination and held that: (1) the partnerships lacked any profit objective; (2) the sales forecast and the values of the license, leases, and tapes were grossly overstated; and (3) these were sham transactions entered into primarily for their tax benefits. Id. at 347-352, 355.

After the Charlton decision the partnership's tax matters partner agreed to the disallowance of all deductions and investment tax credits and the disallowance was passed through to each partner. Zfass was assessed $15,773 for 1982 and $10,805 for 1983 plus interest and penalties. The IRS argued that Zfass was negligent in claiming the deductions and penalized him under 26 U.S.C. § 6653. In addition, it claimed Zfass's underpayment of tax was due to a value overstatement and penalized him under 26 U.S.C. § 6659. The IRS further charged Zfass an increased rate of interest because his underpayment was due to a tax motivated transaction. Zfass does not contest that he owes $15,773 and $10,805 for the disallowed deductions, but he does contest the IRS's assessment of interest and penalties. The Tax Court upheld the penalties assessed by the IRS. The Tax Court declined to consider whether Zfass was liable for additional interest under § 6621(c) since the Tax Court determined that it lacked jurisdiction under White v. Commissioner, 95 T.C. 209 (1990).

5

Zfass appeals the Tax Court's determination that the negligence and overvaluation penalties apply. In addition, Zfass contends that White v. Commissioner is wrongly decided and that the Tax Court has jurisdiction over additional interest under § 6621(c).

DISCUSSION

The Tax Court's findings of fact will be upheld unless they are clearly erroneous. Hendricks v. Commissioner, 32 F.3d 94, 97 (4th Cir. 1994). The Tax Court's decision is clearly erroneous if "on the entire evidence the reviewing court is left with the definite and firm conviction that a mistake has been made." Faulconer v. Commissioner, 748 F.2d 890, 895 (4th Cir. 1984). "[W]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Hendricks, 32 F.3d at 97, citing Thomas v. Commissioner, 792 F.2d 1256, 1260 (4th Cir. 1986).

I. Negligence Penalties

Under former § 6653, a taxpayer could be assessed a 5% penalty for underpayment of taxes if any part of the underpayment was due to negligence or intentional disregard of rules and regulations.[2] The taxpayer bears the burden of disproving IRS's determination of negligent underpayment. Korshin v. Commissioner, 91 F.3d 670, 671 (4th Cir. 1996). Negligence denotes "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Id. at 672, citing Schrum v. Commissioner, 33 F.3d 426, 437 (4th Cir. 1994).

One factor which courts consider in determining if persons acted negligently is whether they relied on advice from a tax advisor. United States v. Boyle, 469 U.S. 241, 252 (1985); Leonhart v. Commissioner, 414 F.2d 749, 750 (4th Cir. 1969). However, that reliance must be reasonable and the taxpayer must show that the accoun-

_____

[2] I.R.C. § 6653 was repealed by the Omnibus Budget Reconciliation Act of 1989, Pub. L. No. 101-239, 103 Stat. 2106, § 7721(c)(2), effective for returns due after 1989. Negligence is now one component of the accuracy-related penalty found in I.R.C. § 6662. Zfass's taxes for 1982 and 1983 obviously were for periods prior to the change.

6

tant had all the necessary information to make an informed decision. Id.

Zfass claims that he relied on advice from his accountant regarding the propriety of the investment in the instant case and that this reliance was evidence that he exercised due care.**3** Zfass also argues that he had tremendous experience with sports medicine and was aware of the market for continuing medical education tapes in that area. He claims that his experience provided him with independent judgment that the investment would be a good one. Zfass thus contends, relying on Mollen v. United States, 72 AFTR. 2d 93-6443; 93-2 U.S.T.C. ¶ 50,585 (D.C. AZ 1993), that advice from his accountant plus his independent examination of the investment are evidence that he exercised due care.

In Mollen the taxpayer was involved in a similar transaction to the one of Zfass. The taxpayer was also a medical doctor. He received information regarding the partnership and personally examined the information. Mollen also claimed that due to his prior experience as a physician, he knew of Hahnemann Medical College and its good reputation. Mollen also consulted a tax attorney who advised him that the transactions were legitimate under the Internal Revenue Code. The district court held that by consulting with, and relying upon, the advice of his accountant and lawyer, Mollen had acted reasonably. Mollen, 72 AFTR. 2d at 93-6447.

However, Zfass's problem lies in his reliance on Mollen which is a different case and rests on different facts. Most importantly, he gives insufficient weight to the deference we pay to lower courts. The district court may not have abused its discretion in Mollen. It looked at the facts and, assessing them, determined that Mollen acted reasonably.**4**

---

**3** The significant expertise of Zfass's accountant and Zfass's close relationship with the accountant are assumed to be established. It is sufficient to know that Zfass and his accountant had both a professional and a personal relationship, and that Zfass's accountant was extremely involved in Zfass's business affairs.

**4** The facts concerning Zfass were not identical. Zfass did not fully apprise his accountant of the relevant information and Zfass did not properly rely on his accountant's advice.

Thus, in the instant case, we have quite a different situation. On somewhat similar, but somewhat different, facts, the Tax Court determined that Zfass's actions were not reasonable. Zfass must show, not just that other courts have reached contrary conclusions, but that the Tax Court's decision was clearly erroneous. Zfass has not met that burden.

Zfass was given the opportunity to invest in a complicated partnership. The private offering memorandum contained significant warnings regarding the risk of the investment. It also included information which indicated that the taxpayer would receive a tax write-off up to 3.8 times the amount of the investment. In addition, the offering statement warned that the IRS was aggressively investigating tax shelter programs. Zfass bought one share of the partnership.

Zfass first argues that he cannot be negligent because he reasonably relied on his accountant. However, the Tax Court determined that Zfass failed to prove that he relied on his accountant. Zfass did not call his accountant as a witness and there is no evidence in the record indicating what advice Zfass's accountant may have provided. In addition, Zfass was unable to provide a bill or proof of payment regarding the advice he received from his accountant.[5]

_____

[5] Zfass argues that the reason he does not have a bill is that

> Over the years, Dr. Zfass and Freasier reached an agreement for the payment of legal services and medical services. Each would bill the other for significant or large projects and professional services. However, for the more routine and mundane services which did not involve much time, they frequently did this on a quid pro quo basis. Dr. Zfass did pay Freasier for large legal projects and service provided to him by Freasier.

Therefore, he claims that this advice was given to him as a quid pro quo for medical services. Interestingly, such quid pro quo activities are taxable. 26 C.F.R. 161-2(d) ("If services are paid for in exchange for other services, the fair market value of such other services taken in payment must be included in income as compensation." Zfass should have paid taxes on all of the "free" services which he received from Freasier in exchange for medical services. Therefore, in his brief, absent a statute of limitations bar, Zfass may have subjected himself to further income tax liability.

8

At trial, Zfass failed to establish what advice he received from Freasier. There is no evidence in the record to show what knowledge or information Freasier had regarding the investment. The Tax Court determined that Zfass did not reasonably rely on his accountant. It determined that there was no evidence which established that Freasier was aware of the non-tax aspects of the plan. In addition, it determined that there was no evidence in the record to establish what kind of advice Freasier gave to Zfass. Zfass may have relied on Freasier, but the Tax Court's determination that Zfass did not sufficiently rely on his accountant and its finding that the accountant lacked sufficient knowledge about the investment to give competent advice are entitled to deference and are not clearly erroneous. See also Illes v. Commissioner, 982 F.2d 163 (6th Cir. 1992) (finding that vague assertion that accountant "suggested that this was a good investment" was insufficient to prove good faith reliance).

Zfass also argues that he is not liable for negligence since, due to his experience in sports medicine, he had the expertise and intelligence properly to evaluate the profitability of the continuing medical education sports medicine video tapes. He argues that he looked at the market for CME credit and determined that the video tapes would be a good investment.

In Bernard v. Commissioner, 731 F.2d 230 (4th Cir. 1984), the court addressed a tax shelter which provided a 4 to 1 ratio of tax benefits to investment. In Bernard, the court determined that a book deal which was designed to provide investors with major tax benefits and had no profit motive was an improper deduction. One of the factors that the court looked at was the ratio of tax benefits to the amount invested.[6]

The Tax Court determined that, if Zfass were a reasonable investor,

_____

[6] The Bernard case concluded:

> It is a frightening prospect when our wealthy citizens, those in the highest income tax brackets, seek to take indefensible advantage of the country and their fellow citizens, especially those who have far less from which to meet their tax responsibilities.

Id. at 233.

he would have done more than he did in determining whether the investment made sense. It determined that the 3.8 to 1 ratio of tax benefits to investment should have given Zfass notice that the investment scheme was primarily for a tax purpose.

In addition, Zfass took no actions which would indicate that he believed that his investigation revealed a profitable financial investment. He did not consult with investment advisors or the managers of the partnership. Absent his alleged conversation with his accountant, and viewing tapes made by other similar partnerships, there is no evidence that Zfass conducted any investigation into the profitability of the investment. The Tax Court determined, as a factual finding, to which deference is due, that Zfass's decision was"tax driven, not economically driven." In light of the facts, the Tax Court's decision was not clearly erroneous.[7]

II. Valuation Overstatement Penalties

First, Zfass argues that the valuation overstatement penalty does not apply in the instant case. Second, he argues that even if it applies, the penalty should have been waived because he acted in good faith by relying on the advice of his accountant. The second issue can be dealt with easily because the Tax Court did not abuse its discretion in determining that Zfass did not act in good faith by relying on his accountant. Therefore, the Tax Court did not abuse its discretion in holding that Zfass was not entitled to a waiver under § 6659(e) since he did not act in good faith.

As to the issue of whether § 6659 applies to the instant case, Zfass argues that § 6659 should not apply because in the instant case a

_____

[7] The Tax Court is only requiring the taxpayer to exercise common sense. The partnership had a very large tax benefit as a percentage of the investment and a large part of the partnership material was devoted to the tax benefits. The partnership material contains almost no discussion regarding marketing efforts, sales projections or profitability of the partnership. There is not a per se rule that a 3.8 to 1 ratio of tax benefits to investment is a tax shelter, but surely such a large ratio should put the taxpayer on notice that the investment may be tax and not profit motivated.

10

deduction was disallowed not overvalued. However, disallowance of the deduction was because it was overvalued. Section 6659 provides that if a taxpayer owes additional taxes due to a valuation overstatement, the taxpayer may be assessed a penalty of 30% of the underpayment attributable to the overvaluation. § 6659(b).

Zfass principally relies on Heasley v. Commissioner, 902 F.2d 380 (5th Cir. 1990).**8** In Heasley, the IRS disallowed a deduction and an investment tax credit for "energy saving units." The IRS imposed a value overstatement penalty for the underpayment of tax "attributable to a valuation overstatement." 26 U.S.C. § 6659(a). The Tax Court upheld the IRS's determination. The Fifth Circuit reversed. It held that

> whenever the IRS totally disallows a deduction or credit, the IRS may not penalize the taxpayer for a valuation overstatement included in that deduction or credit. In such a case, the underpayment is not attributable to a valuation overstatement. Instead, it is attributable to claiming an improper deduction or credit.

Heasley, 902 F.2d 382-383. The court determined that to eliminate entirely is not an overstatement but a complete eradication of a value.

However, the Fifth Circuit's approach has not been followed by other circuits. The Second, Sixth, and Eighth Circuits have held that when an underpayment stems from deductions that are disallowed due to a lack of economic substance, the deficiency is attributable to an overstatement of value and is subject to penalty under § 6659. See Massengill v. Commissioner, 876 F.2d 616, 619-20 (8th Cir. 1989); Illes v. Commissioner, 982 F.2d 163, 167 (6th Cir. 1992); Gilman v. Commissioner, 933 F.2d 143, 151 (2d Cir. 1991), cert. denied, 502 U.S. 1031 (1992).

---

**8** The facts in Heasley were much different. The Heasleys did not have a college education and were blue collar workers. They completely relied on the advice of an accountant and a questionable investment adviser. In fact, the Heasleys were indeed scammed out of a considerable sum of money. They were clearly not trying to defraud the government.

11

In any event, the IRS did not follow the Fifth Circuit's approach in <u>Heasley</u> and instead chose to follow the Second, Sixth and Eighth Circuit's approach. The IRS determined that since the deduction in the present case was a sham and lacked economic substance, the over-valuation penalty applied.

The Tax Court also followed the Second, Sixth and Eighth Circuits and held that "when a transaction lacks economic substance, the correct basis is zero; any amount claimed is a valuation overstatement." <u>Zfass v. Commissioner</u>, 71 T.C.M. (CCH) 2670 (1996). The Tax Court determined that in the instant case a value overstatement was a primary reason for the disallowance of the claimed tax benefits and that the valuation overstatement penalty applied. We agree with the Tax Court that the reasoning of the Second, Sixth and Eighth Circuits is applicable here.

Zfass argues that the Tax Court improperly relied on <u>Charlton</u> and that the facts of <u>Charlton</u> are not facts in the instant case. He argues that there is no evidence in the record regarding the market values of the leases and there is no evidence in the record that Zfass's estimation of the leases' value was improper. Zfass is correct that the facts in <u>Charlton</u> are not quite the same as those in the instant case, but <u>Charlton</u>'s legal rule remains. Thus, the finding in <u>Charlton</u> that the plan lacked economic substance is binding upon Zfass. The reason that the plan lacked economic substance is because of the over valuation of the master leases.

In addition, the Tax Court concluded that in the present case "[i]t is obvious from the record in this case that valuation overstatement was a primary reason for the disallowance of the claimed tax benefits." Such a conclusion is supported by the record, and the Tax Court's findings in this regard were not clearly erroneous. We agree with the Tax Court that the taxpayer's underpayment stems from excessive deductions that were disallowed due to the lack of economic substance; therefore, the deficiency is attributable to a value overstatement.

III. <u>Jurisdictional Issue</u>

If a taxpayer fails to pay taxes when they are due, the taxpayer is charged interest from the date the payment is due until the payment

12

is actually made. 26 U.S.C. § 6601(a). If there is an underpayment in tax over $1,000 and that underpayment is attributable to a "tax motivated transaction" the interest rate is increased to 120 percent of the rate of interest prescribed in § 6621(a)(2). See § 6621(c)(1). The code defines "tax motivated transaction" as any valuation overstatement or transaction which is fraudulent or a sham. § 6621(c)(3)(A).

The Commissioner determined that this provision applied to Zfass and assessed interest on the underpayment of taxes. The Tax Court, relying on White v. Commissioner, 95 T.C. 209, 211 (1990) (en banc) ruled that the Tax Court did not have jurisdiction to redetermine the increased rate of interest.

Probably, the issue is an irrelevant one because the Tax Court was correct in its holding that Zfass was involved in a"tax motivated transaction." Hence, should we reach the merits of the aspect of Zfass's case dealing with the increased interest rate, we might well affirm.

However, since the Tax Court claimed it lacked jurisdiction to consider whether Zfass was liable for additional interest, we must address the jurisdictional question. There are no appellate court opinions upholding or denying the Tax Court's decision in White. However, there are several appellate court cases which recognize that the Tax Court does not have jurisdiction regarding interest determinations. See Melin v. Commissioner, 54 F.3d 432, 434 (7th Cir. 1995) (no jurisdiction to review Commissioner's decision not to abate interest); McMullen v. Commissioner, 27 F.3d 510, 511 (11th Cir. 1994) (no jurisdiction to redetermine interest when taxpayer has not pre-paid interest); Littfin v. Commissioner, 17 F.3d 1345 (10th Cir. 1994); Bax v. Commissioner, 13 F.3d 54 (3d Cir. 1993) (same); Transport Manufacturing & Equipment Co. v. Commissioner, 434 F.2d 373, 381 (8th Cir. 1970).

In White, the Tax Court examined its statutory grant of jurisdiction and determined that it did not have jurisdiction to redetermine additional interest.**9** The court noted that it was a court of limited jurisdic-

_____

**9** The Tax Court backed away somewhat from White in Barton v. Commissioner, 97 T.C. 548 (1991). In Barton, the Tax Court held that

13

tion and only had that jurisdiction which was provided to it by statute. It then examined its statutory authority. Section 6230 of the Internal Revenue Code provides the Tax Court with jurisdiction over deficiency proceedings. Specifically, the Tax Court has jurisdiction regarding any deficiency attributable to affected items which require partner level determinations.

Deficiency is defined under § 6211(a) as the amount by which the tax imposed exceeds the amount paid. However, § 6601(e)(1) of the code specifically excludes interest from the definition of tax for purposes of deficiency proceedings. The Tax Court therefore determined that interest due was not considered a deficiency and that the Tax Court had no jurisdiction to redetermine interest because it was not a deficiency.

We agree with the Tax Court's statutory analysis. The Tax Court properly followed its opinion in White v. Commissioner holding that it did not have jurisdiction to decide the interest question.

Accordingly, we affirm the Tax Court's opinion throughout.

AFFIRMED

_____

it had jurisdiction to consider a § 6621(c) interest assessment if the party had paid the tax due plus the interest penalties. The court determined that once the interest was paid it could be considered an overpayment, and the court had jurisdiction to determine whether there was an overpayment pursuant to § 6512. Thus, had Zfass paid the penalty plus interest, the Tax Court may well have had jurisdiction to decide this issue.

14