**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LAKEWOOD ASSOCIATES, Robert G.
Moore, Tax Matters Partner,
Petitioner-Appellant,

No. 98-1499

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent-Appellee.

Appeal from the United States Tax Court.
(Tax Ct. No. 93-24656)

Argued: October 26, 1998

Decided: December 4, 1998

Before MICHAEL and MOTZ, Circuit Judges, and
BOYLE, Chief United States District Judge for the
Eastern District of North Carolina, sitting by designation.

_____

Affirmed by unpublished opinion. Chief Judge Boyle wrote the opin-
ion, in which Judge Michael and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** Douglas E. Kahle, PENDER & COWARD, P.C., Virginia
Beach, Virginia, for Appellant. Thomas James Sawyer, Tax Division,
UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Appellee. **ON BRIEF:** Christopher L. Perkins, PENDER &
COWARD, P.C., Virginia Beach, Virginia, for Appellant. Loretta C.
Argrett, Assistant Attorney General, Teresa E. McLaughlin, Tax Divi-

sion, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

BOYLE, Chief District Judge:

The Internal Revenue Service disallowed a deduction for a loss claimed by Appellant Lakewood Associates ("Lakewood") on its 1989 tax return. Lakewood filed a petition in the Tax Court for a readjustment of partnership items. After a trial on January 14, 1997, the Tax Court entered a decision in favor of Appellee, Commissioner of Internal Revenue ("Commissioner"), on December 29, 1997. Lakewood then brought this appeal. For the reasons discussed below, the Court affirms the decision of the Tax Court.

I.

Lakewood is a Virginia general partnership, with Robert Moore as its general partner. Moore has been in the real estate development business in the Tidewater, Virginia area for over forty years. In 1987, Lakewood purchased 632 acres of unimproved real estate on Elbow Road in Chesapeake, Virginia, known as the "Elbow Lake" property, with the intention of building single-family homes on the land. At that time, the property was zoned for agricultural use only.

Lakewood had two hurdles to overcome before it could develop the Elbow Lake property for residential purposes. First, Lakewood had to obtain a change in the property's zoning from the City of Chesapeake. Second, a portion of the property contained wetlands, and Lakewood needed to obtain a permit from the U.S. Army Corps of Engineers pursuant to the Clean Water Act before developing the property.

ZONING. On February 8, 1988, Lakewood applied for rezoning of the property from agricultural to single-family residential. On September 7, 1988, a staff report to the Chesapeake Planning Commission recommended that the zoning application be rejected for several reasons. The report cited concerns with increased school and traffic demands, capital expenditures for road improvements, problems with the planned sewer system for the property, and inconsistencies with the city's comprehensive land use plans. Based on this staff recommendation, the Planning Commission rejected Lakewood's re-zoning application. However, on October 18, 1988, the Chesapeake City Council approved Lakewood's re-zoning application subject to certain contingencies, and passed an ordinance to that effect.

According to the Chesapeake City Charter, new zoning cannot take effect for 30 days in order to allow time for the city residents to object to the City Council's actions. Residents of Chesapeake organized a committee and mounted a petition drive to prevent the planned zoning change. After acquiring the necessary number of petition signatures, the residents filed the petition with the local court, which ordered a voter referendum. R.G. Moore Corporation, a partner in Lakewood, challenged the referendum procedure in state court, but lost.

The referendum was held on March 7, 1989, and the voters defeated Lakewood's proposed re-zoning by a wide margin. Of the 12,347 ballots, 11,800 (or 96.4 percent) voted against the re-zoning. R.G. Moore Corporation appealed the lower court decision allowing a referendum to the Virginia Supreme Court, which, on April 20, 1990, upheld the decision of the lower court.

As of the time of trial in the Tax Court in January 1997, no further zoning changes had been sought for the Elbow Lake property.

WETLANDS. Under the Clean Water Act, the U.S. Army Corps of Engineers (the "Corps") is authorized to issue Section 404 permits for development in wetland areas. In 1987, the Corps adopted its first Wetland Delineation Manual ("1987 Manual"), which, although not mandatory, was routinely used by the Norfolk Division of the Corps in determining jurisdiction and processing permit applications. In January 1989, the Corps adopted a new manual ("1989 Manual"), which changed the means of applying the three criteria for defining wetlands

and substantially increased the area of lands over which the Corps asserted jurisdiction. Also in 1989, the Corps and the Environmental Protection Agency ("EPA") executed a Memorandum of Agreement ("MOA") which set forth the procedures for the two agencies in the processing of Section 404 permits. The effective date of the MOA was February 7, 1990.

On January 28, 1991, Lakewood applied for its Section 404 permit. Using the 1989 Manual, Lakewood's experts believed that the Elbow Law property was approximately 74 percent wetlands. The application did not contain all the information required to process the application, and the Corps requested the additional necessary information over the next several months. After Lakewood did not respond, the Corps administratively withdrew the application.

In August 1991, Congress passed legislation which prevented the use of the 1989 Manual. The Corps reverted to using the 1987 Manual and allowed applicants who had submitted wetlands delineations using the 1989 Manual the option of submitting new delineations using the 1987 Manual. Over the next several years, the Corps and Lakewood communicated, and Lakewood submitted a new delineation, paid for by its bank, that followed the 1987 manual. Lakewood has taken the necessary steps to keep its delineation "active," which allows the delineation to be used with any later section 404 application.

LAKEWOOD'S ATTEMPTED DEDUCTION.  On its 1989 tax return, Lakewood claimed an ordinary loss deduction of just under $10 million pursuant to sections 165 and 1231 of the Internal Revenue Code. Lakewood argued that the regulations in the 1989 Manual constituted a taking, which entitled it to a deduction in the year of the taking. The Internal Revenue Service ("IRS") disallowed the loss, stating that Lakewood had failed to establish a condemnation, involuntary conversion, or disposition based on a closed completed transaction.

Lakewood filed a petition in the Tax Court for a readjustment of partnership items. After it first determined that the inability to obtain a change in zoning was the cause of the reduction in the value of Lakewood's property, the Tax Court held that such failure to obtain

4

a zoning change was not a loss realization event. Lakewood did not challenge this latter determination of what constitutes a realization event. Instead, Lakewood appealed to this Court challenging the lower court's finding that a zoning change was not probable.

II.

Whether the Tax Court was correct in finding that it was not probable that Lakewood Associates could obtain a change in the zoning of its property at the time of the claimed deduction or within a reasonable period of time thereafter is reviewed under the clearly erroneous standard. See Ripley v. Commissioner, 103 F.3d 332, 334 (4th Cir. 1996). A decision of the Tax Court "is clearly erroneous if on the entire evidence the reviewing court is left with the definite and firm conviction that a mistake has been made." Zfass v. Commissioner, 118 F.3d 184, 188 (4th Cir. 1997) (internal quotations omitted). If "there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Id.

Lakewood claims that it presented in the Tax Court"a wealth of uncontroverted evidence" that re-zoning of the Elbow Lake property was probable in 1989 or shortly thereafter. Consequently, Lakewood argues, the Tax Court's finding on that issue is clearly erroneous, and this Court should overturn the Tax Court's decision that failure to obtain a zoning change was the cause of the reduction in the property's value. In support of this position, Lakewood relies heavily on the opinions and report of its expert, Bruce Hatfield, who stated that the chance of re-zoning the Elbow Lake property is good for two reasons: the successful re-zoning of other properties in the general area, and his conclusion that the referendum was a fluke of bad timing and misleading representations from the group opposed to re-zoning. Lakewood tries to buttress Hatfield's positions by arguing that they are "expert opinions to which the IRS stipulated prior to trial."

Lakewood's characterization of the impact of Hatfield's opinions is misleading. The Commissioner did not stipulate to the truth of the opinions themselves, but to the admissibility of Hatfield's report, the truth of the facts underlying the opinions, and Hatfield's qualifications as an expert. The Tax Court, therefore, was not constrained to accept the opinions without question. Hatfield was qualified as an

5

expert only in real estate appraisal, and, as noted by the Tax Court, he "did not assert any special expertise in zoning issues." Furthermore, a court is not bound to accept the testimony of an expert witness when no opposing witness is put on the stand. See Lukens v. Commissioner, 945 F.2d 92 (5th Cir. 1991) (stating that the Tax Court may reach a determination on the ultimate issue based on its own findings); Buffalo Tool & Die Mfg. Co. v. Commissioner, 74 T.C. 441 (1980) (stating the Tax Court may accept opinion testimony in part, in its entirety, or not at all).

While Lakewood points out that the Commissioner had no expert witnesses of his own and presented no evidence in rebuttal, Lakewood ignores the stipulated facts that the Chesapeake Planning Commission initially rejected the re-zoning application and that 96.4 percent of voters in a referendum opposed the re-zoning. Lakewood tries to neutralize these undisputed facts by arguing that the referendum result was a fluke of bad timing -- Hatfield testified that the referendum was only successful because it coincided with a general election -- and a product of "misleading, if not fraudulent, representations by a small group of no-growth advocates in Chesapeake." This reasoning is unpersuasive for several reasons. First, the Virginia Supreme Court found that the group opposing the zoning change engaged in "puffery," not fraud. Second, the result of the election was not ambiguous: over 96 percent of those casting ballots voted against re-zoning.

Based on the evidence and the stipulated facts, it was entirely reasonable for the Tax Court to conclude that Lakewood's failure to obtain a zoning change in 1989 indicated that such a change was probably unlikely in the near future. The uncontroverted evidence supporting the lower court's finding is that the Chesapeake Planning Commission opposed the re-zoning, as did 96.4 percent of the city's voters casting ballots in the referendum. Therefore, the Tax Court's finding, that re-zoning was not probable at the time of the claimed deduction or within a reasonable time thereafter, was not clearly erroneous.

This Court need not address the alternative ground upon which the Commissioner urges we affirm the lower court. Because we have determined that the Tax Court's findings regarding zoning were not

6

clearly erroneous, it is unnecessary to decide whether, in the circumstances of this case, a change in federal wetland regulations resulted in a tax recognition event.

III.

The Tax Court's finding that a zoning change was improbable in 1989 or shortly thereafter is not clear error given the evidence of the planning commission's and the voters' rejection of the change. Consequently, the judgment of the Tax Court is

<u>AFFIRMED</u>.

7