**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

WILLIE J. BARRON, JR.,
Plaintiff-Appellant,

v.

No. 99-1027

MARVIN RUNYON, Postmaster
General, U. S. Postal Service,
Northern Virginia Division,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CA-98-100)

Argued: December 2, 1999

Decided: February 28, 2000

Before TRAXLER and KING, Circuit Judges, and
Margaret B. SEYMOUR, United States District Judge for the
District of South Carolina, sitting by designation.

_____

Affirmed by unpublished opinion. Judge Seymour wrote the opinion,
in which Judge Traxler and Judge King joined.

_____

**COUNSEL**

**ARGUED:** Declan C. Leonard, MARTIN, ARIF, PETROVICH &
WALSH, Springfield, Virginia, for Appellant. David George Karro,
UNITED STATES POSTAL SERVICE, Washington, D.C., for

Appellee. **ON BRIEF:** Helen F. Fahey, United States Attorney, Richard Parker, Assistant United States Attorney, R. Andrew German, Managing Counsel, UNITED STATES POSTAL SERVICE, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

SEYMOUR, District Judge:

This matter is before this court on Appellant Willie Barron's ("Barron") appeal of a district court order dismissing his claim under the Family and Medical Leave Act ("FMLA") against his former employer, the United States Postal Service ("USPS"). After a bench trial, the district court entered its conclusions of law on the record, issued separate written finding of facts, and entered judgment for the USPS. Barron filed this timely notice of appeal in accordance with Rules 3 and 4(a)(1)(B) of the Federal Rules of Appellate Procedure. For the reasons set forth more fully below, this court affirms.

I.

Barron worked for the USPS as a clerk at the Merrifield, Virginia Processing and Distribution Center from 1986 until his termination in December of 1994. During his tenure with the USPS, Barron received repeated reprimands for excessive absenteeism.

Barron received a termination notice for having a number of absences without official leave ("AWOL") one year prior to his December 1994 termination. However, the USPS chose not to terminate Barron and entered into a "Last Chance/Firm Choice Agreement" ("Agreement") with him on December 23, 1993. This Agreement remained effective for a one year period and provided, inter alia, that any unscheduled absences could result in immediate termination. The

2

Agreement further defined unscheduled absences as"any absences not scheduled and approved in advance of Mr. Barron's scheduled reporting time and includes, but is not limited to, tardiness, emergency leave (such as emergency annual leave or sick leave), leave without pay ("LWOP"), and failure to report/remain as scheduled for overtime or holiday work." (J.A. 279). Barron admitted at trial that he understood the Agreement to mean that he could be terminated for any future unexcused absences.

The present action arises out of absences which occurred after the signing of the Last Chance Agreement. On January 1, 1994, Barron requested FMLA leave in order to care for his girlfriend, Kandis Bennet ("Bennet"), who had suffered a back injury. His acting supervisor, Willie Clubbs, denied Barron's request and explained to Barron that he was not eligible for FMLA leave because Bennett was not his spouse. Barron married Bennett on January 11, 1994.

Barron again requested FMLA leave on January 12, 1994 to care for his wife. With this request, Barron provided a January 11, 1994 letter from his wife's doctor indicating that his wife would have surgery on February 11, 1994, that she would need help in her home for at least one week following her hospital discharge, and that she would need follow-up care after surgery. This request for leave, running from February 9 to February 14, 1994, was approved by Mr. Jose Lopez, Manager of Distribution Operations for Barron's shift ("Lopez").

Barron did not return to work as scheduled, and he remained out of work until April 4, 1994. During Barron's absence, Karen Robinson ("Robinson") became his new supervisor. On March 30, 1994, Robinson sent Barron a letter requesting that medical documentation supporting his extended leave be submitted to the Medical Unit on or by April 6, 1994. The letter also indicated that failure to do so could result in termination. When Barron returned to work on April 4, 1994, Robinson was not available. Barron testified that he gave the requested documentation to a supervisor in the payroll department; however, he was unsure of the identity of the supervisor who received his information. Robinson never saw any of the requested documentation until the arbitration of Barron's termination grievance.

3

Barron received his final notice of removal on December 20, 1994. This notice of removal contained the following list of unexcused absences which were considered in the decision to terminate Barron:

| | | |
|---|---|---|
| December 16, 1994 | 29 Minutes | Late |
| November 17, 1994 | 8 Hours | AWOL |
| November 7/10, 1994 | 16 Hours | AWOL |
| October 13/17, 1994 | 40 Hours | Emergency AL |
| September 8/9, 1994 | 16 Hours | Unscheduled SL |
| August 6/10, 1994 | 24 Hours | AWOL |
| July 17, 1994 | 8 Hours | Emergency AL |
| June 16/18, 1994 | 24 Hours | Unscheduled SL |
| June 4, 1994 | 8 Hours | Unscheduled SL |
| May 19, 1994 | 8 Hours | Unscheduled SL |
| May 5, 1994 | 8 Hours | Emergency AL |
| February 19/March 3, 1994[1] | 268 Hours | AWOL |
| January 27/February 4, 1994 | 56 Hours | AWOL |
| December 30, 1993/January 7, 1994 | 56 Hours | Unscheduled LWOP |

In addition to the absences listed above, the notice of removal listed three other absences from 1991 and 1992. Barron does not dispute that he was absent on the occasions outlined in his notice of termination. Rather, Barron contends that some of these absences were protected by the intermittent leave provisions of the FMLA.

After Barron's termination, he submitted a letter from his wife's doctor dated January 3, 1995, indicating that the absences on May 1, 19; June 4, 16-18; July 17; August 6-10; September 8-9; October 13-17; and November 7-10, 17, were all due to his wife's medical condition. However, those absences do not account for all of Barron's recorded absences.

Barron testified at trial that on or around February 16, 1994, he called the Administrative Support Office ("ASO") and the tour superintendent to notify the USPS that he would need additional time off. Barron also testified that on February 24, 1994, he again called to notify the USPS that he would be providing additional documentation

_____

[1] The record reveals that the reference to March 3 should instead be April 3, 1994.

of his wife's medical condition. However, Barron admits that he never provided this documentation until after Robinson's request.

Barron admitted at trial that he knew of the FMLA requirements at the time he made his first request for FMLA leave on January 1, 1994. Lopez testified at trial that the USPS gave its employees FMLA service talks in late 1993 and posted FMLA notices on bulletin boards throughout the Merrifield facility. Although Barron testified that he did not recall receiving any information regarding the FMLA from the USPS, he admitted receiving a copy of his union's FMLA pamphlet in the mail. This pamphlet provided a detailed discussion of Barron's FMLA rights, including the Act's requirement for thirty days advance notice, if feasible. The pamphlet also specifically mentioned standard form 3971 as the appropriate form to use in requesting FMLA leave.

II.

Barron raises several issues on appeal. First, Barron asserts that the district court improperly interpreted the FMLA's statutory and regulatory provisions concerning intermittent leave. Second, Barron alleges that the district court erred in concluding that the USPS complied with the notice provisions of the FMLA. Third, Barron contends that the district court erred in allowing evidence regarding the effects of unscheduled FMLA leave on its labor force and in concluding that all of his absences were not necessary to assist his wife in her recovery from back surgery.

The appellate court reviews the district court's determinations of law de novo. Meekins v. United Transp. Union, 946 F.2d 1054, 1057 (4th Cir. 1991). The district court's factual findings are subject to reversal only if found to be clearly erroneous. Fed. R. Civ. P. 52(a). A factual finding is clearly erroneous when the appellate court, after reviewing the complete record is left with the definite and firm conviction that a mistake has been committed. Front Royal & Warren County Indus. Park Corp. v. Town of Front Royal, Virginia, 135 F.3d 275, 284 (4th Cir. 1998). "[W]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Zfass v. Commissioner, 118 F.3d 184, 188 (4th Cir. 1997).

5

Barron contends that the district court erred when it concluded that most, if not all, of his absences were not FMLA-protected. Specifically, Barron asserts that his leave should qualify as intermittent leave or a reduced leave schedule.

The FMLA allows covered employees to take up to twelve weeks of unpaid medical leave in any twelve month period for serious health conditions and protects their right upon their return, to be placed in the same or an equivalent position. 29 U.S.C. §§ 2612(a)(1)(D) & 2614(a). The FMLA also provides that, where medically necessary, a person may take leave intermittently or be placed on a reduced leave schedule. 29 U.S.C. § 2612(b)(1). Intermittent leave is defined in the interim regulations[2] as "leave taken in separate blocks of time due to a single illness or injury, rather than one continuous period of time, and may include leave of periods from an hour or more to several weeks. Examples of intermittent leave would include leave taken on an occasional basis for medical appointments, or leave taken several days at a time spread over a period of six months, such as for chemotherapy." 29 C.F.R. § 825.203(b).

The district court correctly concluded that the facts did not support Barron's assertion that he sought intermittent leave or a reduced leave schedule. Barron requested and received a one week period of FMLA leave to care for his wife following her back surgery. Barron did not return to work until after his supervisor requested additional documentation to support his absence. Barron admits that he provided no additional documentation of a need for FMLA leave during his unauthorized five-week absence. There was sufficient evidence from which the district court could conclude that Barron failed to provide adequate notice of a need for intermittent leave.

Barron also argues that, despite his inadequate notice of a need for intermittent FMLA leave, the USPS was estopped from terminating him because of its failure to provide adequate notice of Barron's FMLA rights. The USPS offered evidence of its compliance with the

_____

**2** The final regulations did not become effective until February 6, 1995, after Barron's termination. Accordingly, all references shall be to the interim regulations which took effect on August 5, 1993, unless otherwise indicated.

6

posting requirements contained in the interim regulation. See 29 C.F.R. § 825.300 (1993). Further, Barron testified that he was aware of his FMLA rights. He admitted receiving his union's pamphlet outlining his rights and obligations under the Act. Barron's unsuccessful January 1, 1994 attempt to invoke the protections of the Act and his subsequent request for FMLA leave on January 12, 1994 establish that Barron was aware of his FMLA rights. This court concludes that there was sufficient evidence from which the district court could conclude that the USPS fully complied with the notice requirements under the interim regulations.

Barron also argues that the district judge erred in allowing testimony regarding the effect Barron's unscheduled leave had on the labor pool. Because one of the express purposes of the FMLA is to "balance the demands of the workplace with the needs of families," 29 U.S.C. § 2601(b)(1), the district court did not err is allowing this testimony.

III.

For the foregoing reasons, we affirm the district court's judgment following a bench trial in favor of the USPS on Barron's FMLA claim.

AFFIRMED