**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

PATRICIA B. BURNS,
Plaintiff-Appellant,

v.

UNINET, INCORPORATED;
SOUTHEASTERN COMPUTER

No. 99-1264

CONSULTANTS, INCORPORATED,
Defendants-Appellees,

and

JOHN E. BJORN,
Defendant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-98-382)

Argued: January 24, 2000

Decided: April 5, 2000

Before NIEMEYER, Circuit Judge,
Deborah K. CHASANOW, United States District Judge
for the District of Maryland, sitting by designation,
and Andre M. DAVIS, United States District Judge
for the District of Maryland, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Larry A. Pochucha, COATES & DAVENPORT, Richmond, Virginia, for Appellant. Stephen Michael Silvestri, MILES & STOCKBRIDGE, P.C., Baltimore, Maryland, for Appellees. **ON BRIEF:** David J. Ervin, MILES & STOCKBRIDGE, P.C., McLean, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant, Patricia B. Burns, appeals from a judgment of dismissal entered at the close of the plaintiff's case in an employment discrimination action tried to the court without a jury. We affirm.

I

Burns filed a complaint asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.; she alleged sexual harassment employment discrimination, disparate treatment employment discrimination on the basis of sex, and retaliation. She did not request a jury trial. Named as defendants were UniNet, Inc., its president John E. Bjorn, and an affiliated entity, Southeastern Computer Consultants, Inc.

At the conclusion of discovery, defendants moved for summary judgment. Meanwhile, counsel for Burns, having realized that a jury trial had not been requested, filed a motion for jury trial pursuant to Fed. R. Civ. P. 39(b).**1** After a hearing on the motions, the district

_____

**1** Rule 39(b) provides: "Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court; but, notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues." Fed.R.Civ.P. 39(b).

2

court granted the motion for summary judgment, in part, dismissing all claims asserted against the individual defendant, Bjorn, as well as the disparate treatment claim. Burns does not challenge these rulings on appeal. The district court denied the motion for summary judgment as to the sexual harassment and retaliation claims. The district court also denied the motion for jury trial.

The case proceeded to trial before the court without a jury. Burns called six witnesses and testified on her own behalf. She also introduced numerous exhibits. At the close of the plaintiff's case, defendants moved for judgment pursuant to Fed. R. Civ. P. 52(a)[2] and (c).[3] The district court granted the motion. Subsequently, the district court set out its findings of fact and conclusions of law in a written memorandum. This appeal followed.

II

Appellate review of a judgment rendered in a non-jury trial is circumscribed by the highly deferential "clearly erroneous" standard. See Anderson v. City of Bessemer, 470 U.S. 564, 574 (1985); Carter v. Ball, 33 F.3d 450, 457 (4th Cir. 1994) (affirming district court's dismissal of employment discrimination case at the close of plaintiff's case). A trial court's findings of fact will only be disturbed if "`the reviewing court on the entire evidence is left with the definite and

_____

[2] Rule 52(a) provides as follows in pertinent part: "In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58 . . . . Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Fed.R.Civ.P. 52(a).

[3] Rule 52(c) provides as follows in pertinent part: "If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue . . . . Such a judgment shall be supported by findings of fact and conclusions of law as required by subdivision (a) of this rule." Fed.R.Civ.P. 52(c).

firm conviction that a mistake has been committed.'" <u>Anderson</u>, 470 U.S. at 574 (quoting <u>United States v. United States Gypsum Co.</u>, 333 U.S. 364, 395 (1947)).

III

Burns worked as a salesperson for appellee UniNet, Inc., during two separate periods. Her first tenure began in December 1990 and continued through August 1992, when she resigned voluntarily. Uni-Net rehired Burns in October 1993. She was discharged from employment in March 1995.

Burns presented evidence that Bjorn, the person she identified as the architect of the alleged hostile environment giving rise to her claims, was a difficult manager for whom to work. He was given to inappropriate and unprofessional outbursts in the workplace. Moreover, several former UniNet employees testified as to his flirtatious behavior. On one occasion, after a group of employees met for "happy hour" after work -- a common occurrence -- he kissed one of his subordinates. When the employee expressed her disapproval of his actions, however, no further actions of the sort were repeated.

Apart from the evidence of the kissing incident mentioned above and one other incident in which Bjorn offered to have an affair with a female subordinate "if [she] would be interested," neither of which involved Burns, the trial was bereft of evidence of an overtly sexual nature.[4] Counsel for Burns concedes that his theory of the sexual harassment claim in the case was something of a hybrid:

> The sexual harassment of Burns at UniNet cannot be packaged to fit nicely within the framework of either a "quid pro quo" or "hostile work environment" analysis; however, an impartial review of the evidence presented at trial clearly demonstrates that Burns suffered abusive mal-treatment during the course of her employment which adversely effected the conditions of her employment and consequently her abil-

_____

[4] On one occasion, after he had separated from his wife, Bjorn complained to Burns that he could not find a woman who could "boil a pot of water." Burns also testified that Bjorn stared at her legs.

4

> ity to achieve the level of performance otherwise obtainable solely and exclusively as a result of her gender.

Appellant's Brief at 35.**5**

Ultimately, therefore, Burns undertook to prove her sexual harassment claim through proof of the existence of a "pattern" allegedly followed by Bjorn whereby, shortly after a woman in whom he was personally interested started to work at UniNet, he would flirt with and otherwise seek to create a "bond" with her by providing extra assistance and mentoring. Under this theory, if and when such a female subordinate made clear her lack of any romantic interest in Bjorn, then he would turn on her and act purposefully to make her workday unpleasant and to diminish the quality of her work product. On the other hand, there was evidence that one employee, who allegedly submitted to Bjorn's advances, gained promotions and eventually became Bjorn's wife. While expressing skepticism, during trial, as to the persuasiveness of this theory under the circumstances, the district court clearly understood the underlying hypothesis of the sexual harassment claim advanced by Burns. See J.A. at 231-34.

Thus, Burns adduced evidence that tended to suggest that while Bjorn was generally "mean" to everybody and was prone to having "fit[s]" of temper, see id. at 262-64, he was especially "emotionally harassing" toward her, see id. at 201, after he came to believe she harbored no romantic interest in him. Burns voluntarily terminated her first period of employment with UniNet, in part, because she found Bjorn's treatment of her insufferable.

When Burns rejoined UniNet in 1993, she did so partly in reliance on an assurance from her immediate supervisor that she would work in a newly-opened office in Frederick, Maryland, and would have limited contact with Bjorn. Her supervisor soon departed, however, and she was once again required to have contact with Bjorn.

_____

**5** The Supreme Court has noted that "quid pro quo and hostile work environment are helpful, perhaps, in making a rough demarcation between cases in which threats are carried out and those where they are not or are absent altogether, but beyond this are of limited utility." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 751 (1998).

5

The sales performance of the staff in the Frederick office declined through the end of 1994 and all of the salespersons in that office, two men and Burns, were put on probation. Burns attributed the deterioration in her performance to purposeful acts of her managers, including Bjorn, to whom she ascribed a sexually discriminatory motive.

In November 1994, Burns filed a charge of discrimination with the Equal Employment Opportunity Commission. Thereafter, according to Burns, new and ever changing operating procedures were put into place, which, again according to Burns, kept the sales staff off balance and in the dark as to what was required. Burns contends that these changes were aimed at her and were animated by UniNet's and Bjorn's retaliatory motives arising from the filing of her EEOC charge.

Finally, by March 1995, Burns was nervous, anxious and barely able to withstand the pressures of the workplace. After receiving a memorandum pointing out some further deficiency in her performance, and despairing over a planned management visit with her major client, she had a "panic attack" and departed the office without permission, leaving behind a memorandum asserting, in part, that she was "unable to perform my duties." UniNet terminated her employment the next day for the reasons set forth in the memorandum of termination, which Burns introduced in evidence.

IV

As to the merits of her discrimination and retaliation claims, fully cognizant of the burden placed upon her by the relevant standard of review, Burns has mounted a frontal attack on the district court's findings of fact. She has parsed the district court's memorandum opinion and has identified what she contends are more than a dozen "factual discrepanc[ies]" that, according to her view of the inferences reasonably arising from the evidence, fatally undermine the district court's ultimate findings and conclusions that she failed to establish by a preponderance of evidence that she was the victim of sexual harassment discrimination or retaliation.

We have closely examined the record and we are constrained to reject Appellant's contention that the district court's critical findings

6

are not rooted in the evidence presented at trial. The court's findings are based on the evidence and, equally important, the <u>absence</u> of evidence. It is clear to us that the district court simply rejected -- as it was entitled to do as the fact finder -- the host of inferences on which her "pattern of conduct" theory of sexual harassment discrimination claim hinged. Similarly, the district court declined to draw an inference of retaliation on the scant evidence supporting that claim. At bottom, then, the district court's ultimate findings are clear and unequivocal and reflect that the district court simply did not interpret the evidence in the manner Burns hoped it would be interpreted.

A

As to the sexual harassment claim, the district court correctly identified the controlling legal principles. <u>See</u> J.A. at 636-40 (discussing, <u>inter alia, Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742 (1998); <u>Oncale v. Sundowner Offshore Services, Inc.</u>, 523 U.S. 75 (1998); and <u>Hartsell v. Duplex Prod., Inc.</u>, 123 F.3d 766 (4th Cir. 1997)). In light of the district court's resort to the correct legal principles, the court's ultimate findings, including its findings that: (1)"no evidence [established] that Bjorn made sexual advances to Burns," J.A. at 636; (2) "Burns experienced no overt sexual conduct by Bjorn or by any supervisors," <u>id</u>.; (3) Burns "failed to offer any evidence that the conduct of Bjorn . . . occurred because of her gender," <u>id</u>. at 637; (4) the actions complained of by Burns were "sexually neutral or, at most, ambiguous," <u>id</u>. at 638; and (5) Bjorn's"conduct [did] not create an environment that a reasonable person would find hostile or abusive," <u>id</u>. at 640, are not clearly erroneous. <u>See Carter</u>, 33 F.3d at 457 (evaluating the district court's conclusions as to the"factual sufficiency" of the evidence of employment discrimination).**6**

_____

**6** The Seventh Circuit has observed:

> Although it is beyond dispute that pure questions of law should be reviewed <u>de novo</u>, the existence of racial harassment in a hostile work environment involves an application of law (the standards governing the existence of racial harassment and hostile work environment discrimination) to facts (the specific discriminatory conditions alleged by the plaintiff). If the trial judge correctly states the law, then his findings as to whether the facts

7

B

Our analysis of the record leads to the same conclusion with respect to the retaliation claim. To make out a prima facie case of retaliation under Title VII, 42 U.S.C. § 2000e-3, a plaintiff must show that (1) the plaintiff engaged in a protected activity, such as filing a complaint with the EEOC; (2) the employer took adverse action against the plaintiff; and (3) the protected activity was causally connected to the employer's adverse action. Beall v. Abbott Labs., 130 F.3d 614, 619 (4th Cir. 1997). Once this is shown, the burden shifts to the employer to rebut the presumption of retaliation by articulating a legitimate nonretaliatory reason for the adverse action. Id. The plaintiff must then demonstrate that the employer's reason was mere pretext for retaliation by proving "both that the reason was false, and that discrimination was the real reason for the challenged conduct." Id. (internal quotation omitted).

A plaintiff may demonstrate the third requirement of a prima facie case -- that the protected activity was causally related to the employer's adverse action -- by showing "essentially . . . that she was fired after her employer became aware that she had filed a discrimination charge." Williams v. Cerberonics, 871 F.2d 452, 457 (4th Cir. 1989). Such proof, while clearly not conclusive in proving ultimate liability,

_____

> meet the legal standard will be disturbed only if they are clearly erroneous. Our review would be more searching if the district court has committed an error of law, including one that "infect[s] a so-called mixed finding of law and fact, or a finding of fact that is predicated on a misunderstanding of the governing rule of law."
>
> Here the district judge properly understood and expressed the current legal standards for finding racial harassment in a hostile work environment. Because he did not misstate, misinterpret or misapply the law, we apply the clear error rule to his findings, for the defendant takes issue with the trial judge's view of the evidence, not with his view of the law.

Daniels v. Essex Group, Inc., 937 F.2d 1264, 1269-70 (7th Cir. 1991) (citations omitted). As in Daniels, in the case at bar, Burns disagrees with the district court's view of the evidence.

8

"certainly satisfies the less onerous burden of making a prima facie case of causality." Id. (showing that firing occurred three months after filing of discrimination complaint was sufficient to show causation); see also Carter, 33 F.3d at 460.

On November 23, 1994, Burns notified Bjorn's superior that she had been sexually harassed by Bjorn. On November 28, 1994, Burns filed a complaint with the EEOC. Three months later, on March 10, 1995, Burns was fired. The passage of time between the filing of her EEOC charge and Appellant's termination was only two weeks longer than the time held sufficient to demonstrate prima facie causation in Cerberonics. See 871 F.2d at 457.

Nevertheless, in the case at bar, the district court found that Burns "offered no evidence to support the third element of her retaliation claim . . . ." J.A. at 640-41.[7] It went on to explain, however, that "where no other evidence supports a finding of retaliatory motive, the temporal proximity between the discovery [by the employer] of an EEOC charge and an employee's termination is insufficient to show a causal connection." Id. at 641.

The district court's factual conclusion is wholly consistent with Fourth Circuit authority. In Cerberonics, this Court held that "mere knowledge on the part of an employer that an employee it is about to fire has filed a discrimination charge is not sufficient evidence of retaliation to counter substantial evidence of legitimate reasons for discharging that employee." 871 F.2d at 457. Evidentiary support for the existence of UniNet's legitimate nonretaliatory motive in termi-

_____

[7] To be sure, one could read the district court's findings on this issue to suggest that the court was focused on the existence vel non of a prima facie case of retaliation, rather than on the ultimate question of whether Burns had adduced sufficient evidence to persuade the district court of the existence of UniNet's retaliatory motive for her termination. We are satisfied, however, particularly in light of the district court's reliance on Carter, which dealt expressly with a claim of retaliation under identical circumstances, that the district court did not reject the proof as failing to establish a prima facie case, but instead, ruled on the merits of the retaliation claim at the close of the plaintiff's case-in-chief, as Fed.R.Civ.P. 52 plainly authorizes.

nating Burns is found in evidence entered by Burns during her case-in-chief. See J.A. at 412; see generally id. at 464-512. Thus, even though the record in this case does not "overwhelmingly support[ ] the trial court's finding of no retaliation," Cerberonics, 871 F.2d at 457, the district court nevertheless must be affirmed under the deferential "clearly erroneous" standard of review."[W]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Zfass v. Commissioner, 118 F.3d 184, 188 (4th Cir. 1997) (quoting Anderson, 470 U.S. at 574).**8**

V

Finally, Burns's counsel candidly admitted fault in failing to make a timely request for jury trial, see J.A. at 48-60 ("The frailty of human nature is neither an excuse nor a refuge, but the only accounting available."). He requested the district court to exercise its discretion under Rule 39(b) to empanel a jury. See Malbon v. Pennsylvania Millers Mut. Ins. Co., 636 F.2d 936, 940 n.12 (4th Cir. 1980). We discern no abuse of discretion in the district court's denial of the motion.

VI

For the reasons set forth above, the judgment is

AFFIRMED.

_____

**8** In the view we take of the case, it is unnecessary to consider the issue of whether Southeastern Computer Consultants, Inc., as well as UniNet, was subject to suit under Title VII.

10