T.C. Summary Opinion 2012-25

UNITED STATES TAX COURT

WILLIAM PORCH AND LISA PORCH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9036-10S.                    Filed March 21, 2012.

<u>James G. Meimaris</u>, for petitioners.

<u>Nancy P. Klingshirn</u>, for respondent.

SUMMARY OPINION

DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions

of section 7463 of the Internal Revenue Code in effect when the petition was filed.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case. Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent issued a notice of deficiency to petitioners in which he determined deficiencies of $8,392 and $4,471[1] for 2005 and 2006, respectively, as well as section 6663 fraud penalties of $5,964 and $3,239 against William Porch (petitioner) for 2005 and 2006, respectively. Alternatively, respondent determined section 6662(a) accuracy-related penalties of $1,678 and $894 against petitioners for 2005 and 2006, respectively. The issues for decision are whether: (1) petitioners received unreported income for 2005 and 2006; (2) petitioners are entitled to deductions claimed for expenses on Schedules C, Profit or Loss From Business; and (3) petitioner is liable for section 6663 fraud penalties for 2005 and 2006, or alternatively that petitioners are liable for section 6662(a) accuracy-related penalties for 2005 and 2006.[2]

---

[1]All amounts are rounded to the nearest dollar.

[2]Other adjustments made to petitioners' Federal income tax returns for the years in issue are computational and will not be discussed.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by reference. Petitioners resided in Ohio when they filed their petition.

Petitioner owned and operated Best for Less Carpets Sales and Installation, Inc. (Best for Less), during the years in issue. Petitioner also sold and installed carpet as an independent contractor for the Sherwin-Williams Co. (Sherwin-Williams) during the years in issue.

Petitioner used unnumbered invoices for payments from Best for Less customers. The funds generated from petitioner's operation of Best for Less were deposited into an account ending in 0501 at Fifth Third Bank (account 0501). The name on the account is Best for Less Carpets, L.L.C.[3]

Petitioners received gross receipts from Best for Less of $111,048 for 2005. They reported gross receipts of only $75,000 from Best for Less on Schedule C for 2005. They reported supplies expenses[4] of $12,650 and other expenses of $5,685

---

[3]Petitioner's business' name includes the term "Inc." Petitioner, however, reported his income from Best for Less on Schedule C, and there is no evidence in the record that Best for Less elected to not be disregarded as an entity separate from its owner. See sec. 301.7701-3(b)(1)(ii), Proced. & Admin. Regs.

[4]The supplies expenses should have been properly reported as cost of goods

(continued...)

on Schedule C. Petitioner deposited checks made out to Best for Less totaling $48,990 and cash totaling $7,640 into account 0501. He also received nonemployee compensation of $54,418 from Sherwin-Williams and was issued a Form 1099-MISC, Miscellaneous Income, for the compensation. Petitioner deposited the Sherwin-Williams compensation into an account ending in 4438 at Huntington National Bank (account 4438).

Petitioner purchased a house from June Lomax for $31,707[5] in December 2004. He sold the same property to Gary Cooper for $93,000 in February 2005. Thirty seven thousand dollars of the proceeds from the sale of the property was paid to Maxlo Construction, Inc., for renovations. Petitioner received proceeds of $40,000 from the real estate transaction. Those proceeds were deposited into account 0501 in 2005. Petitioners did not report any short-term capital gain income on their 2005 joint Federal income tax return from the real estate transaction.

---

[4](...continued)
sold on Schedule C. The supplies included carpet, tack strips, and the like sold to customers for the installation of carpet. This is also true for the supplies expense deduction claimed on the 2006 Schedule C.

[5]The purchase price in the stipulation of facts is $31,500. This amount does not reflect the settlement charges and county taxes petitioner paid in addition to the contract price of $31,500.

Petitioner also received a Form 1099-B, Proceeds From Broker and Barter Exchange Transactions, reporting $3,033 of capital gain income from Computershare Shareholder Services for 2005.  Petitioners did not report the $3,033 on their 2005 return.

Petitioners received gross receipts from Best for Less of $123,664 for 2006. They reported gross receipts of only $75,000 on Schedule C from Best for Less for 2006.  They reported the following expenses:  mortgage interest of $5,864, supplies of $10,575, and other expenses of $8,755.  Petitioner deposited checks made out to Best for Less totaling $56,407 and cash totaling $13,360 into account 0501.  He also received nonemployee compensation of $53,898 from Sherwin-Williams and was issued a Form 1099-MISC for the compensation.  Petitioner deposited the Sherwin-Williams compensation into account 4438.

Petitioners' 2005 return was chosen for audit, and the audit was later expanded to include the couple's 2006 joint Federal income tax return.  The auditor (Mr. Montgomery) attempted to verify petitioners' 2005 return using a "Cash T" analysis.  He recorded all of the income that came in per the return and all of the income that went our per the return.  He also included a figure for personal living expenses.

The combination of this information is used to determine whether there is an imbalance in the taxpayer's account. The imbalance can be either positive or negative. If the imbalance is negative, an understatement is indicated. To determine whether the understatement is due to unreported income, an auditor should question the taxpayer in depth about his or her income. After Mr. Montgomery performed a Cash T analysis for 2005, he determined that petitioners had an understatement of over $49,000.

At the initial meeting with Mr. Montgomery petitioner provided the 2005 Form 1099-MISC from Sherwin-Williams and 13 unnumbered Best for Less invoices[6] that roughly matched the amount of gross receipts reported on the 2005 return. Petitioner did not provide bank statements or any other documents requested by Mr. Montgomery during the initial meeting, nor did he mention the 2005 real estate transaction. Mr. Montgomery informed petitioner that a second meeting was necessary. At this point in the process, petitioner retained counsel.

Petitioner provided some but not all of the requested bank statements at his second meeting with Mr. Montgomery. Mr. Montgomery summonsed the remaining bank statements and all deposit items from petitioners' banks.

---

[6]One of the invoices is dated 2004.

Respondent issued petitioners a notice of deficiency for 2005 and 2006 that: included unreported Schedule C income of $36,048 and $48,664 for 2005 and 2006, respectively; included unreported capital gain income of $27,326 for 2005; disallowed a deduction for Schedule C other expenses of $5,371 for 2005 and all Schedule C other expenses for 2006; and disallowed a deduction for Schedule C mortgage interest of $2,386 for 2006.[7]  Respondent also determined that petitioner was liable for section 6663 fraud penalties for both years in issue.  Alternatively, respondent determined that petitioners were liable for section 6662(a) accuracy-related penalties for both years in issue if the underpayments of Federal income tax were not due to fraud.

## Discussion

Generally, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous.  Rule 142(a); see INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933).  In some cases the burden of proof with respect to relevant factual issues may shift to the Commissioner under section 7491(a).  Petitioners did not argue or present evidence that they satisfied the

---

[7]Petitioners were allowed additional Schedule C supplies expense deductions during the audit.

requirements of section 7491(a).  Therefore, petitioners bear the burden of proof with respect to the adjustments to income in the notice of deficiency.

I.      Unreported Income

Gross income is defined as including all income from whatever source derived.  Sec. 61(a).  Compensation for services, gross income derived from business, and gains derived from dealings in property are specifically included in that definition.  Sec. 61(a)(1), (2), and (3).  Through their counsel's signature on the stipulation of facts, petitioners are bound by the statements therein.  See Rule 91(e).

The parties agree that petitioners had gross receipts from Best for Less of $111,048 and $123,664 for 2005 and 2006, respectively, and that they reported gross receipts from Best for Less of only $75,000 for each year.  The parties also agree that petitioners failed to report short-term capital gain income from petitioner's 2005 real estate transaction.  Additionally, petitioners concede that they failed to report Form 1099B capital gain income for 2005.

A.      Petitioners' Use of a Tax Return Preparer

Petitioner testified that a return preparer prepared the couple's 2005 and 2006 returns but did not sign them. Petitioners' only argument for why income for 2005 and 2006 was unreported is that their return preparer was elderly and failed

to include it on the returns. A bare allegation against their return preparer does not relieve petitioners of their duty to know what their returns report.[8] See Metra Chem. Corp. v. Commissioner, 88 T.C. 654, 662 (1987); Bailey v. Commissioner, 21 T.C. 678, 687 (1954). Generally, absent reasonable reliance, in good faith and after full disclosure, the duty to file accurate returns cannot be avoided by placing responsibility on a return preparer or agent. Zfass v. Commissioner, 118 F.3d 184, 188 (4th Cir. 1997), aff'g T.C. Memo. 1996-167; Freytag v. Commissioner, 89 T.C. 849, 888 (1987), aff'd, 904 F.2d 1011 (5th Cir. 1990), aff'd, 501 U.S. 868 (1991).

B.  Short-Term Capital Gain Income From the Real Estate Transaction

During the audit petitioner claimed that he sold a house for Mr. Lomax so that Mrs. Lomax would not receive any share of the house when the couple divorced. Petitioner explained that Mr. Lomax gave him a quitclaim deed for the house and he gave Mr. Lomax the proceeds from the sale of the house. When Mr. Montgomery requested copies of the quitclaim deed, the settlement statements for the sale of the property, and the check that petitioner wrote to Mr. Lomax for the sale proceeds, petitioner's story changed.

---

[8]Petitioners' return preparer was not called as a witness at trial. Petitioner testified that she died before the date of trial.

At trial petitioner testified that he had received $2,500 for some work that he performed on the house but that he wrote a check to Mr. Lomax for the remainder of the proceeds from the sale of the property. Petitioner also testified that the deed to the property was in Mrs. Lomax's name and that she is the individual that sold him the house.

Petitioner's testimony that he was merely acting as a conduit for Mr. Lomax is not supported by the record. Petitioner provided no documents to support his testimony. The settlement statements entered into evidence show a sale of real property from June Lomax to petitioner in December 2004 and the sale of the same real property by petitioner to a third party in February 2005.

Respondent's determination to include $36,048 and $48,664 of unreported gross receipts from Best for Less for 2005 and 2006, respectively, and to include $27,326 of unreported capital gain income in petitioners' gross income for 2005 is sustained.

II. Deductions

Deductions and credits are a matter of legislative grace, and the taxpayer bears the burden of proving that he or she is entitled to any deduction or credit claimed. Rule 142(a); Deputy v. du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Additionally, a taxpayer

must substantiate all expenses for which deductions are claimed. Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976). Section 162 generally allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.

Petitioners stipulated they paid Schedule C other expenses of $624 and $533 for 2005 and 2006, respectively. Petitioners also stipulated that they paid Schedule C mortgage interest of $3,478, the amount respondent allowed, for 2006.

Petitioners made no arguments nor did they produce evidence to show that they are entitled to deductions in any amounts greater than respondent allowed. Therefore, respondent's determination to disallow petitioners' deductions for amounts in excess of what was allowed is sustained.

III. Section 6663 Fraud Penalty

Respondent determined that petitioner was liable for a section 6663 fraud penalty for each of the years in issue.[9] The Commissioner has the burden of proving fraud by clear and convincing evidence. Sec. 7454; Rule 142(b); Parks v. Commissioner, 94 T.C. 654 (1990).

---

[9]Petitioner wife is not liable for the fraud penalty. See sec. 6663(c).

As part of his burden of proof in the trial of a fraud case, the Commissioner must first prove an underpayment of some amount of tax.  Sec. 6663(a); Hebrank v. Commissioner, 81 T.C. 640, 642 (1983).  To do this the Commissioner may not merely rely on the taxpayer's failure to disprove the deficiency determination.  Parks v. Commissioner, 94 T.C. 654.  Petitioners, however, stipulated that they had tens of thousands of dollars of unreported income for 2005 and 2006 that created underpayments of Federal income tax.

Second, the Commissioner must show that at least some part of the underpayment of tax was due to fraud.  Sec. 6663(a); Rule 142(b); DiLeo v. Commissioner, 96 T.C. 858, 873 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992); Parks v. Commissioner, 94 T.C. at 664; Hebrank v. Commissioner, 81 T.C. 640.  If the Commissioner establishes that some portion of the underpayment is attributable to fraud, the entire underpayment shall be treated as attributable to fraud, except with respect to any portion of the underpayment that the taxpayer establishes is not attributable to fraud.  Sec. 6663(b).

The existence of fraud is a question of fact to be resolved upon consideration of the entire record.  DiLeo v. Commissioner, 96 T.C. at 874.  Because direct evidence of fraud is rarely available, fraud may be proved by circumstantial evidence and reasonable inference from the facts.  Petzoldt v.

Commissioner, 92 T.C. 661, 699 (1989). The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983).

Courts have developed a nonexclusive list of factors or "badges of fraud" that demonstrate fraudulent intent. Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992). No single factor is necessarily sufficient to establish fraud; however, a combination of several of the factors may constitute persuasive evidence of fraud. Id. For the years in issue, several badges of fraud relate to petitioner's unreported Schedule C and capital gain income.

A.    Understatement of Income

Petitioner reported gross receipts from Best for Less of $75,000 for each of the years in issue. Petitioner stipulated that he had gross receipts from Best for Less of $111,048 and $123,664 for 2005 and 2006, respectively. Petitioner also stipulated that he had unreported short-term capital gain income from the sale of real estate for 2005 and unreported capital gain income of $3,033 from the sale of securities for 2005. Petitioner had understatements of income for both years in issue.

B.     Inadequate Records

Section 6001 requires a taxpayer to maintain sufficient records to allow for the determination of the taxpayer's correct tax liability. Petzoldt v. Commissioner, 92 T.C. at 686. If a taxpayer fails to maintain or does not produce adequate books and records, the Commissioner is authorized to reconstruct the taxpayer's income. Sec. 446(b); Petzoldt v. Commissioner, 92 T.C. at 686. Indirect methods may be used for this purpose. Holland v. United States, 348 U.S. 121 (1954). The Commissioner's reconstruction need only be reasonable in light of all the surrounding facts and circumstances. Petzoldt v. Commissioner, 92 T.C. at 687; Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970). Bank deposits constitute prima facie evidence of income. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

Mr. Montgomery performed a Cash T analysis for petitioners' 2005 return and found an understatement of more than $49,000. After performing the Cash T analysis, Mr. Montgomery requested petitioners' bank records.

At the initial meeting with Mr. Montgomery, petitioner provided 13 invoices and a Form 1099-MISC totaling $75,987 to substantiate his 2005 income. He, therefore, produced documentation showing gross receipts approximating the amount reported on his Schedule C. Petitioner's invoices are unnumbered and incomplete and fail to account for an additional $35,061 in unreported gross receipts

from Best for Less that Mr. Montgomery determined was includible in income after reviewing petitioner's bank deposits. Petitioner subsequently agreed that the unreported amount was income. Petitioner provided no records to substantiate his 2006 income. Petitioner's records for 2005 and 2006 were inadequate.

C.    Implausible or Inconsistent Explanations of Behavior

As discussed supra pp. 9-10, petitioner provided inconsistent explanations for his 2005 real estate transaction. His explanation for how he provided financially for his family was implausible.

Petitioner answered in the affirmative when he was asked whether he was the "primary breadwinner in his family". The 2005 return reports the couple's adjusted gross income as $11,537, and petitioner testified that he experienced a business loss for 2005. He also testified that he paid taxes and mortgage interest of $11,705 for 2005. When asked: "[W]hat did you live on in 2005?", petitioner testified: "I mean, it was rough. My wife, my friends, Lomax. You know, people helped me out. I mean, when I couldn't make ends meet, you know, I prayed about it."

Petitioner's testimony is self-serving and improbable, and the Court does not have to accept it as the truth. See Tokarski v. Commissioner, 87 T.C. at 77. His explanation for the real estate transaction is inconsistent, and his explanation for how he paid living expenses for 2005 is implausible.

D.     Failure To Cooperate With Tax Authorities

Mr. Montgomery testified that he mailed a Letter 2202 (letter) to petitioners that explained the audit process and what records they were required to bring to the audit.  A copy of the letter was entered into evidence.  Petitioners did not deny receiving the letter.  The letter informed petitioners that they would need to provide records to substantiate items reported on Schedule C for the following:  petitioner's income, expenses, and deductions; workpapers used in preparing his return; bank statements, canceled checks, and duplicate deposit slips covering the period form December 21, 2004, through January 1, 2006; and information on loans, repayments, and other nontaxable sources of income.

After multiple unavailing attempts to obtain petitioner's bank statements from him and his counsel, respondent had to summons petitioner's bank records to obtain the necessary information.  Respondent's finding it necessary to issue summonses to obtain petitioner's records is evidence of petitioner's failure to cooperate with tax authorities.  See Zadan v. Commissioner, T.C. Memo. 1993-85.

E.     Dealing in Cash

When Mr. Montgomery reviewed petitioner's bank statements and deposits, he found thousands of dollars of cash deposits that petitioner did not include in his income or show to be nontaxable.  Mr. Montgomery testified that the cash deposits

were included in petitioner's business income because "I could not find another explanation for the cash." Petitioner did not deny that the cash payments were business income. He testified that when he was paid in cash he used the money to buy supplies for his business. Although this may be what petitioner did when a customer paid cash, it does not relieve him of his obligation to report the cash received as income. See sec. 61(a)(2).

F.  Engaging in a Pattern of Behavior That Indicates an Intent To Mislead

Intent to mislead or conceal may be inferred from a pattern of conduct. Spies v. United States, 317 U.S. 492, 499 (1943). A pattern of consistent underreporting of income, especially when accompanied by other circumstances showing intent to conceal, is strong evidence of fraud. Holland, 348 U.S. 121; Parks v. Commissioner, 94 T.C. at 664.

Petitioner reported gross receipts from Best for Less of $75,000 for 2005 and 2006. He provided records to substantiate approximately that amount of gross receipts for 2005 at the initial audit meeting. Petitioner stipulated that he had gross receipts from Best for Less of over $100,000 for each of the years in issue. The Court concludes that petitioner engaged in a pattern of behavior with the intent to mislead respondent.

IV.  Conclusion

Respondent's determinations concerning petitioners' unreported income and improperly claimed deductions are sustained.

After a review of all of the facts and circumstances, the Court finds several badges of fraud.  Taken together, petitioner's understatements of income, inadequate records, implausible or inconsistent explanations for his behavior, failure to cooperate with tax authorities, dealings in cash, and intent to mislead are clear and convincing evidence of fraud.  Petitioner did not establish that any amounts of the underpayments for 2005 and 2006 were not due to fraud.  Therefore, the entire amount of the underpayment for each of the years in issue is due to fraud.[10]

We have considered all of petitioners' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

---

[10]Because the Court finds that petitioner is liable for sec. 6663 fraud penalties for both of the years in issue, sec. 6662(a) accuracy-related penalties do not apply for the years in issue.  See sec. 6662(b) (flush language).

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.